IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK J. LAYE, JR., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 02: 04cv0046 |
| | ) | |
| JOHN E. POTTER, Postmaster General, | ) | |
| United States Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

June 2, 2006

   Presently before the Court is the MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Defendant John E. Potter, Postmaster General, United States Postal Service *(Document Nos. 21 and 22)*, and the RESPONSE TO MOTION FOR SUMMARY JUDGMENT filed by Plaintiff (*Document No. 26*). After careful consideration of Defendant's Motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that there is not sufficient record evidence upon which a reasonable jury could return a verdict for Plaintiff, Frank J. Laye, Jr., on his claims of discrimination due to his race and gender. Therefore, the Court will grant the motion for summary judgment of Defendant, John E. Potter, Postmaster General, United States Postal Service.

**PROCEDURAL BACKGROUND**

   Plaintiff filed this civil rights action on January 14, 2004, in which he alleges that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") when he allegedly was subjected to a hostile work environment because of his gender and

race while he was working as a tractor trailer operator at the United States Postal Service's Bulk Mail Center in Warrendale, Pennsylvania.

Defendant has filed the instant motion for summary judgment in which it contends that Plaintiff is unable to establish a *prima facie* case on either his gender or race discrimination claims. Plaintiff has filed a rather cursory Response in which he simply states that he denies the allegations contained in the Motion for Summary Judgment and further states that he "has provided ample evidence to sustain the burden of proof that he is required to prove in the present case that he was subjected to" discrimination.

### BACKGROUND

The facts relevant to this discussion, and viewed in the light most favorable to Plaintiff, are as follows. In October 1995, Plaintiff was hired by the Postal Service as a letter carrier in Chicago, Illinois, as a "Part Time Flexible" employee.[1] In March 1998, Plaintiff was transferred upon his request from his position in Chicago, Illinois to a position as a part time flexible Tractor Trailer Operator/Spotter at the Postal Service's Bulk Mail Center ("BMC") in Warrendale, Pennsyvlania.[2]

---

[1] A "Part Time Flexible" employee does not have the same rights as a full time regular employee under the provisions of the Collective Bargaining Agreement entered into between the United States Postal Service and the American Postal Workers. For example, a part time flexible employee is not guaranteed to work 40 hours a week and must be available to work flexible hours as assigned by the Postal Service. Furthermore, a part time flexible employee is not guaranteed to receive any overtime and is not eligible to participate on the overtime desired list. See Exh. 2, Collective Bargaining Agreement between United States Postal Service and American Postal Workers Union.

[2] A "spotter" is a driver who moves trailers to different designated locations at one particular site.

Plaintiff alleges that upon his transfer to the BMC, he "experienced a hostile work environment and racial discrimination from employees and management." Complaint, at ¶ 6. For example, Plaintiff alleges that he "has received reprimands and disciplinary action for minor infractions that were over-looked for other similar situated Caucasian employees." *Id.* at ¶ 12. In support of his allegation, Plaintiff contends that during the first week that he worked at the BMC, he had two incidents which resulted in him being disciplined and receiving a 2-1/2 day suspension, *to wit:* first, he had an accident with a trailer and then he was accused by another employee of pulling a trailer away from its docketing area before the trailer was safely secured. Plaintiff's union filed a grievance on his behalf, which was settled in his favor. *See* Exh. 4, Pre-Arbitration Settlement Agreement.

Plaintiff also alleges that three incidents of discrimination occurred during his first week of work at the BMC. First, Plaintiff alleges that someone spit on his vehicle in the parking lot. Plaintiff testified that he told his supervisor, Bill Horvantin, about the problem, but that Horvantin's response was noncommittal and he simply asked Plaintiff if he knew who could have done this.

In the second incident, Plaintiff alleges that someone made a large dent on the driver's door on his automobile. However, the record reflects that Plaintiff did not know who dented his vehicle nor did he report the incident to management.

The third incident occurred when Plaintiff saw that someone had made a drawing with his or her hands in the dirt on the side of a leased tractor trailer, which Plaintiff found racially offensive. Plaintiff testified that he did not immediately tell management about the drawing, but rather consulted via telephone with a friend in Chicago that night. The next

morning, Plaintiff took photographs of the drawing and contacted two of his supervisors, Horvantin and Michael Uniatowski, in the afternoon to show them the drawing on the trailer. Plaintiff told the supervisors that he did not like what the drawing symbolized. Plaintiff testified that the supervisors asked, "Do you think it pertains to you?", to which he responded, "Yeah. I'm the only black guy out here." Plaintiff testified that the trailer remained on the premises for about three days and that his supervisors did nothing about the drawing after he showed it to them.

Plaintiff also alleges that his supervisors bypassed him on the Overtime Desired List while they assigned overtime to less senior white employees and that he "was never given the opportunity to bid on job assignments that was afforded to similarly situated Regular Full Time Caucasian employees until November 1999." Complaint at ¶ 18.

The record reflects that on November 8, 2000, Plaintiff made initial contact with an EEO counselor, complaining of discrimination on the basis of race. *See* Exh. 8, EEO Counselor's Inquiry Report. In his Information for Precomplaint Counseling, Plaintiff gave three examples of how he was treated differently than white employees:

"1.  SUPERVISOR OF 3RD TOUR RELAYED HARASSMENT REMARK FROM 2ND TOUR BILL HORVINGTON ABOUT LOG ON TIME.

 2.  VEHICLE INCIDENCES OCCURRED I WAS THE ONLY ONE SENT HOME PENDING REMOVAL. REMARK COMING MGMT DON STARKE.

 3.  A ISSUE INVOLVED PULLING TRAILER FROM THE DOCK ON A RED LIGHT STATUS. I WAS ONLY ONE PENDING REMOVAL AND SUSPENSION REMARK COMING MGMT DON STARKE."

Exh. 17, U.S. Postal Service, Information for Precomplaint Counseling, Dated November 22, 2000; see also Exh.1, Depo. at Frank J. Laye, Jr., at 67, Lines 3-5.

On February 6, 2001, Plaintiff filed with the Postal Service a "EEO Complaint of Discrimination in the Postal Service" in which he alleged five (5) separate acts of discrimination:

> "1. LANGUAGE USED BY MGMT. DON STARKE WHEN I HAD A SMALL MISHAP.  RESULT SUSPENSION.  HE STATED THAT HE DON'T KNOW IF HE SHOULD FIRE ME OR SHIP ME BACK TO HOME TOWN CHICAGO, IL.  4/9/98
>
> 2. BLACK RACIAL GRAFFITI DRAWN ON GOV'T LEASED VEHICLE SUCH AS A TRAILER ON GOV'T PROPERTY . . . . 5/19/98
>
> 3. SCHEDULING ME FOR EVERY STARTING TIME ON ALL THREE SHIFTS.  FROM 4/9//98 - 12/4/99
>
> 4. THREATEN TO FIRE ME FOR ANY MISHAPS VS WHITE EMPLOYEE DON'T GET WRITE UPS FOR THERE MISHAPS. 4-1-98 - PRESENT.
>
> 5. BEING HARASS BY BILL HORVINGTON TO RUSH INTO A GOV'T VEHICLE TO PROFORM (sic) DUTY'S."

Exh. 16, United States Postal Service, EEO Complaint of Discrimination in Postal Service.

On May 20, 2002, Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission in which he alleged that the Postal Service discriminated against him on the basis of race.[3]  *See* Exh. 13, Bench Decision.  On September 17, 2003,  Administrative Law Judge Jose Perez with the Equal Employment Opportunity Commission issued a Bench

---

[3] The summary judgment record reflects that on August 14, 2003, the parties stipulated that Plaintiff's EEOC complaint was solely based on race discrimination during the period from April 9, 1998, to October 19, 2000.  Exh. 13, at 3.

Decision in which he found that Plaintiff had "failed to establish a prima facie case of race discrimination" and "concluded that [Plaintiff] was not subject to a hostile work environment based on his race during the period from April 9, 1998 to October 19, 2000." Exh. 13, Bench Decision, at 18-29.

Plaintiff filed this lawsuit on January 14, 2004, in which he claims that Defendant discriminated against him on the basis of his race and gender and that Defendant subjected him to a hostile work environment.

### STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id*. (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

## DISCUSSION

As stated above, Plaintiff claims that he was subjected to discriminatory acts and a hostile work environment because of his race and gender while he was working as a tractor trailer operator at the Postal Service's BMC in Warrendale, Pennsylvania. Defendant responds that it is entitled to summary judgment because (i) Plaintiff never exhausted his administrative remedies with respect to his claims of gender discrimination; (ii) that although he attempted to exhaust his administrative remedies on his claims of race discrimination, he did not do so in a timely fashion; and (iii) in the alternative, even if Plaintiff did exhaust his administrative remedies on his claims of race discrimination, insufficient evidence exists to demonstrate that he was subjected to a hostile work environment because of his race.

A.      *Exhaustion of Administrative Remedies*

A federal employee's exclusive redress for unlawful discrimination experienced in the workplace is provided in section 717 of Title VII, 42 U.S.C. § 2000e-16(a)-(e); *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829 (1976). Section 2000e-16(c) gives a federal employee the right to file suit in federal court, but mandates that to do so the employee must first pursue and exhaust administrative remedies against his federal employer. Only when a federal employee exhausts his administrative remedies does a district court have jurisdiction to entertain his subsequent Title VII action.

To exhaust his remedies at the administrative level, a federal employee must satisfy the "rigorous administrative exhaustion requirements and time limitations" set out in section 717. *Brown,* 425 U.S. at 829. First, the employee is required to contact the federal agency's

EEO counselor within forty-five days of the alleged discriminatory action and request informal counseling. 29 C.F.R. § 1614.105(a)(1). The EEO counselor must conduct a final interview with the employee no later than thirty days after the date the aggrieved employee contacted the agency's EEO office. 29 C.F.R. § 1614.105(d). If no informal resolution within the agency is forthcoming, the EEO counselor issues a written notification to the employee informing him of the right to file a formal complaint of discrimination with the agency. *Id.* § 1614.105(d).

Within fifteen calendar days of receiving this notification the employee must file a complaint of employment discrimination with the agency's EEO office. *Id.* § 1614.106(b). If the employee fails to file the complaint within the fifteen-day limit, the agency is required to dismiss the entire complaint. 29 C.F.R. § 1614.107(a)(2). If the agency does not reach the merits of the complaint because the federal employee fails to follow one or more steps of the administrative process, the district court may not reach the merits of the claim.

It is a well-established principle that the allegations in a judicial complaint filed pursuant to Title VII are limited by charges of discrimination "like or related to" the allegations contained in the EEOC charge and growing out of such allegations during the pendency of the case before the Commission.

B.        *Claims of Gender Discrimination*

Defendant contends that Plaintiff's claims of gender discrimination were never presented to the EEOC and Plaintiff should, therefore, be barred from bringing these claims due to his failure to exhaust his administrative remedies. As stated *supra,* the timely exhaustion of administrative procedures is a precondition to the maintenance of a federal employment

discrimination civil lawsuit. *Brown,* 425 U.S. at 832. The parameters of the civil action are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Sandom v. Travelers Mortg. Services, Inc.,* 752 F. Supp. 1240, 1246 (D.N.J. 1990). Accordingly, Plaintiff cannot choose to bypass the administrative machinery by raising new theories of recovery for the first time in a federal court action. However, the judicial complaint may encompass any discrimination "like or reasonably related" to the allegations of the EEOC charge. *See Antol v. Perry,* 82 F.2d 1291 (3d Cir. 1996); *Waiters v. Parsons,* 729 F.2d 233, 237-38 (3d Cir. 1984).

In his EEOC complaint, Plaintiff alleged that Defendant discriminated against him on the basis of his race only. The Court finds that the language in the EEOC charge fails to put either the administrative agency or Defendant on notice of Plaintiff's claims of gender discrimination and, thus, this claim could not "reasonably be expected to grow out of the charge of discrimination."

For this reason, the Court will grant the Motion for Summary Judgment as to Plaintiff's claims of gender discrimination.

C.      *Claims of Race Discrimination*

Defendant also contends that Plaintiff did not timely exhaust his claims of racial discrimination and, thus, these claims should also be dismissed. Plaintiff has alleged that employees at the BMC harassed him in a variety of ways in April 1998; that from December 1998 through approximately October / November 2002, he was "repeatedly denied overtime by

the management"; and that he has "received reprimands and disciplinary action for minor infractions that were overlooked for other similar Caucasian employees." Complaint at ¶ 12.

As stated *supra,* a federal employee is required to contact the federal agency's EEO counselor within forty-five days of the alleged discriminatory action. The summary judgment record reflects that Plaintiff first made contact with an EEO counselor on November 8, 2000. *See* Exh. 8, EEO Counselor's Inquiry Report; Exh. 1., Depo. of Frank J. Laye, Jr., at 67. Clearly, the three alleged incidents which occurred in April 1998 are well outside the forty-five (45) day EEO counselor contact period and are thus untimely and barred as a matter of law.

Plaintiff's remaining claims of racial discrimination will be addressed seriatim.

In order to prevail on his claims of race discrimination and hostile work environment, Plaintiff must prove that (1) he suffered intentional discrimination because of his race; (2) the discrimination was severe or pervasive;[4] (3) the discrimination detrimentally affected him; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. *Jenson v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006). In analyzing a hostile work environment claim, the Court may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

---

[4] Historically, cases from the Third Circuit have often phrased this element as requiring "pervasive and regular" harassment. However, our appellate court recently acknowledged that the difference between its own formulation of this element and that of the United States Supreme Court, which requires "severe or pervasive" harassment, is significant, and that the latter must control. *See Jensen v. Potter*, 435 F.3d 444, 449 n. 3 (3d Cir. 2006) (internal citations omitted).

Plaintiff alleges that management and his co-workers "created a hostile work environment towards him because of his race." Pl's Pretrial Narrative Stmt (Document No. 20). To establish the first prong of a hostile work environment based upon racial discrimination, a plaintiff must show that race is a substantial factor in the discrimination and that, if the plaintiff had been of another race, he would not have been treated in the same manner. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1083 (3d Cir. 1996). Speculations, generalities, and gut feelings, however genuine, do not allow for an inference of discrimination to be drawn when they are not supported by specific facts. *See Hargrave v. County of Atlantic,* 262 F. Supp.2d 393, 419 (D.N.J. 2003) (noting that despite plaintiff's conclusory allegation of racial harassment, there was nothing about the alleged misconduct that would support an inference of racial animus or hostility toward the plaintiff).

Plaintiff alleges that from December 1998 through approximately October/November 2002,[5] he was "repeatedly denied overtime by the management." The Court finds and rules that the summary judgment record is utterly devoid of any evidence which demonstrates that Plaintiff was denied overtime based on his race; rather Plaintiff relies upon his own "unsupported assertions, conclusory allegations, or mere suspicions." Such unsubstantiated speculation is not sufficient to withstand summary judgment. *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).

Plaintiff also contends that he has "received reprimands and disciplinary action for minor infractions that were overlooked for other similar Caucasian employees." However,

---

[5] During his deposition in April 2005, Plaintiff testified that he stopped requesting overtime "probably about two and a half years ago" and that he now worked 40 hours a week.

during his deposition, Plaintiff testified that the only reprimand or disciplinary action he received occurred in April 1998.[6]  As explained above, any incidents which occurred in April 1998 are well outside the forty-five (45) day EEO counselor contact period and are thus untimely and barred as a matter of law.

Last, Plaintiff generally complains of "endless and countless times where I felt uncomfortable.  I just felt that I was in a no win situation.  Nothing I could (sic) is right because Bill Horvington always made his presence known that somebody said something without talking to me . . . ."  Exh. 1., Depo of Frank J. Laye, Jr., at Page 60-61.  Our appellate court recently instructed that Title VII does not prescribe a "generalized civility code;" rather it "prohibits severe or pervasive harassment; it does not mandate a happy workplace." *Jenson,* 435 F.3d at 451.

Overall, aside from his mere speculation and conclusory allegations, Plaintiff has not provided any competent evidence that could lead a reasonable fact finder to believe that race

---

[6]   Plaintiff testified as follows:
"Q:   I'm going to go back to the complaint again.  Paragraph 12 states, "The Plaintiff has received reprimands and disciplinary action for minor infractions that were overlooked for other similar Caucasian employees."

      In paragraph 12, are you referring to the pole incident and the red light incident that you were suspended for?

A:   Uh-huh.

Q:   And did you receive any other reprimands?

A:   Huh-uh.  Not that I can remember. Just verbal complaints from Bill Horvington that somebody told him something that I did."

Exh. 1, Depo. of Frank J. Laye, Jr., at Page 42, Lines 11-21.

was a factor in the treatment he received from the Defendant. Because Plaintiff's opposition filing does little more than re-allege the factually unsupported allegations contained in his pleadings, Plaintiff has not established the existence of a genuine issue of material fact that would defeat Defendant's motion for summary judgment on his race discrimination and hostile work environment claims under Title VII.  Accordingly, Defendant's Motion for Summary Judgment on the claims will be granted.

### Conclusion

For the reasons discussed *supra,* the Court finds that the Motion for Summary Judgment filed by Defendant should be granted in its entirety.  An appropriate Order follows.


McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK J. LAYE, JR., | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 02: 04cv0046 |
| | ) | |
| JOHN E. POTTER, Postmaster General, | ) | |
| United States Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER OF COURT

AND NOW, this 2nd day of June, 2006, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the Motion for Summary Judgment filed by Defendant is **GRANTED** and judgment is hereby entered in favor of Defendant, John E. Potter, Postmaster General, United States Postal Service.

The Clerk of Court shall mark this case closed forthwith.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:	Franklin L. Robinson, Jr., Esquire
Email: flrquestions@aol.com

Megan E. Farrell,
Assistant U.S. Attorney
Email: megan.farrell@usdoj.gov

Rebecca Ross Haywood,
Assistant U.S. Attorney
Email: rebecca.haywood@usdoj.gov

Sara K. Kantorik,
United States Postal Service
Email: sara.k.kantorik@usps.gov